IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**MANGET PETERSON**,

    **Movant,**

v.                                        **Case No. 3:19-cv-00463**
                                          **Criminal Case No. 3:18-cr-00070-02**

**UNITED STATES OF AMERICA**

    **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is Movant's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (ECF No. 671).[1] The United States has filed a Response, asking the Court to deny the Motion. (ECF No. 684). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having determined that Movant clearly is not entitled to relief under 28 U.S.C. § 2255, the undersigned **FINDS** no basis for an evidentiary hearing. Accordingly, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Movant's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255; **DISMISS** this civil action, with prejudice; and **REMOVE** this matter from the docket of the Court.

---

[1] The citations in this Proposed Findings & Recommendations are taken from Movant's criminal case: *United States v. Peterson, et al*, Case No. 3:18-cr-00070-02 (S.D.W. Va. 2018).

I.  **Factual and Procedural Background**

On April 3, 2018, Movant Manget Peterson ("Peterson") was indicted in the United States District Court for the Southern District of West Virginia (the "Sentencing Court") on one count of conspiracy to distribute heroin and fentanyl. (ECF No. 1). On August 7, 2018, Peterson signed a plea agreement with the United States in which he agreed to plead guilty to the Indictment in exchange for the United States' promise not to file an information pursuant to 21 U.S.C. § 851. (ECF No. 409). Peterson and the United States stipulated to certain facts and agreed that, under the United States Sentencing Guidelines ("USSG"), Peterson's adjusted offense level would be 32. (*Id.* at 6). The parties reserved their rights to argue for and against a two-level enhancement for possession of a firearm under USSG § 2D1.1(b)(1) and acknowledged their understanding that neither the Probation Office, nor the Sentencing Court, was bound by the parties' calculation of the USSG offense level. (*Id.*). Peterson agreed to waive his right to seek appellate review of his conviction and sentence, unless the sentence exceeded the maximum penalty allowed by law. (*Id.* at 6-7). He likewise waived his right to collaterally attack his guilty plea, conviction, or sentence on any ground, except on a claim of ineffective assistance of counsel. (*Id.* at 7).

On August 21, 2018, the Sentencing Court accepted Peterson's plea of guilty to the charge set forth in the Indictment, found him guilty of the charge, and scheduled a sentencing hearing on December 3, 2018. (ECF No. 410). Senior United States Probation Officer, Beth Srednicki, prepared a Presentence Investigation Report ("PSR") at the Sentencing Court's request. (ECF No. 584). In the PSR, Officer Srednicki calculated Peterson's adjusted offense level to be 34. (*Id.* at 24-25). She found that Peterson's base offense level was 30, and she increased the base offense level by two levels to account for

Peterson's role as an organizer, leader, manager, or supervisor of the drug trafficking organization in which he was involved. (ECF No. 584 at 24-25). Another two-level increase was added for Peterson's possession of a firearm. (*Id*. at 24). With a three-level deduction for acceptance of responsibility, Peterson's total offense level was 31. (*Id*. at 25). Based on his total offense level and Criminal History Category of I, Officer Srednicki calculated Peterson's USSG sentence range to be 108 to 135 months of imprisonment. (*Id*. at 31). His statutory minimum sentence was five years in prison, with a statutory maximum of no more than 40-years' imprisonment. (*Id*.). Peterson's lawyer, Glen Conway ("Conway"), objected to the portion of the PSR that added two levels to the offense level based upon Peterson's possession of a firearm, but no objection was lodged as to the two-level enhancement for Peterson's role in the conspiracy. (*Id*. at 35).

On January 22, 2019, the Sentencing Court adopted the PSR and entered judgment against Peterson, imposing a sentence of 108 months of incarceration, followed by four years of supervised release. (ECF No. 581). Peterson did not appeal his sentence, but filed the instant motion under § 2255. (ECF No. 671). In the petition, Peterson raises three grounds of ineffective assistance of counsel. First, he claims that Conway misled him into signing the plea agreement by telling him that if he failed to plead guilty, he would be designated as a career criminal. (ECF No. 671 at 4). Peterson contends that this advice was faulty. Second, Peterson asserts that Conway should have challenged the leadership enhancement to the sentence. According to Peterson, Conway refused to object to the sentence enhancement even though Peterson asked him to do so, and even in the face of questioning by the Sentencing Court as to why no objection was made. (*Id*.) Finally, Peterson argues that Conway should have challenged "the relevant conduct of Mr. David Miller." (*Id*. at 7). Peterson indicates that certain communications between his co-

3

defendants, Mr. Miller and Willie Peterson, were attributed to Peterson although he did not participate in the communications. (*Id.*). Peterson does not explicitly state the relief he seeks, but given the nature of the motion, he presumably wants his conviction and sentence vacated, set aside, or corrected.

On June 20, 2019, the undersigned ordered Conway to file an affidavit responding to the claims of ineffective assistance of counsel. (ECF No. 674). In addition, the United States was ordered to file a response to the Motion to Vacate within forty-five days after receipt of Conway's affidavit. (*Id.*). Conway's affidavit was filed on July 23, 2019, (ECF No. 681), and the United States submitted its response on August 27, 2019. Peterson was given thirty days to file a reply. (ECF No. 685). More than thirty days have passed, and Peterson has not replied. The Court recently requested that the United States supply transcripts of the plea and sentencing hearings, and those transcripts were made part of the record on June 9, 2020. (ECF Nos. 715, 717). Therefore, this matter is fully briefed and ready for resolution.

## II. **Standard of Review**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan.

4

4, 2006). Consistent with the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). Furthermore, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

### III.   Discussion

As indicated, Peterson's claims are based on alleged instances of constitutionally deficient performance by his attorney. These claims assert violations of the Sixth Amendment to the United States Constitution, which guarantees every criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994).

First, the defendant must show that counsel's representation fell below an

objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88. When evaluating counsel's performance under the first prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689. The "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance … [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). Counsel's performance should be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith,* 539 U.S. 510, 523 (2003). A counsel's trial strategy devised after investigating the law and facts is "virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995). Moreover, the reviewing court should not allow hindsight to alter its assessment of counsel's performance. *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."). Put simply, the inquiry under *Strickland* is "whether an attorney's representation amounted to ***incompetence*** under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88 (2011) (emphasis added).

Second, the defendant must show that he was actually prejudiced by the ineffective assistance of counsel. *Strickland,* 466 U.S. at 687. To establish actual prejudice from counsel's deficient performance in the context of a guilty plea, a "petitioner must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59

6

(1985). The petitioner's "subjective preferences … are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012). In order to demonstrate prejudice, therefore, a petitioner "must convince [the court] that the decision to go to trial 'would have been rational under the circumstances.'" *Dyess*, 730 F.3d at 361 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

In the context of a guilty plea, the court considers whether the plea was constitutionally valid despite the alleged ineffective assistance. The standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). When considering this standard, courts should look to the totality of the circumstances surrounding the guilty plea. *Burket*, 208 F.3d at 190. Where a petitioner "alleges that ineffective assistance of counsel caused the guilty plea itself to be unknowing or involuntary, analysis of such claims must be part of the court's inquiry into the validity of the guilty plea." *United States v. Holbrook*, 613 F. Supp. 2d 745, 761 (W.D. Va. 2009); *see also Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1296 (4th Cir. 1992) ("A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea."). However, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005).

7

### 1. Claim One—Plea was induced by faulty legal advice

Peterson argues that his guilty plea is invalid as it was induced by Conway's erroneous assertion that Peterson's failure to plead guilty could result in him being sentenced as a career offender. Peterson claims that he later learned that Conway was incorrect, because most of his prior convictions were more than fifteen years old. (ECF No. 671 at 4). Conway responds in his affidavit that "[a]t no time during plea negotiations did the United States imply that Manget Peterson was a candidate to be determined a 'Career Offender' under § 4B1.1 of the United States Sentencing Guidelines" and "[a]t no time during plea negotiations did I believe Manget Peterson was a candidate to be determined a 'Career Offender'." (ECF No. 681 at 1). Conway indicates that he actually advised Peterson of the opposite, by expressly informing Peterson that he was not a candidate for career offender designation. (*Id.*). Conway affirms in his affidavit that he explained to Peterson that his criminal history did not meet the requirements for a career offender designation, but that his 1999 conviction for possession of controlled substances could be used against him pursuant to 21 U.S.C. § 851. Peterson was given an opportunity to refute Conway's affidavit on this point, but has not done so.

A review of the record supports Conway's testimony. The plea agreement offered by the United States explicitly includes as an element of consideration that the United States agreed not to file an information under 21 U.S.C. § 851. (ECF No. 409 at 1). At no place in the plea agreement is there any mention of a career offender designation. In fact, the plea agreement explicitly performs Peterson's sentence calculation under the USSG, without any reference to the career offender guidelines. (*Id.* at 6). The only sentencing issue identified in the plea agreement as outstanding is whether Peterson would receive a two-level enhancement for possession of a firearm. Certainly, had the career offender

guidelines been a critical issue in the negotiations, they would have been mentioned in the written agreement between the United States and Peterson. It is simply not credible that Peterson and Conway consented to a plea agreement, which had as its primary purpose the preclusion of a career offender designation, yet failed to include that preclusion in the final written document. Moreover, the plea agreement makes clear that, regardless of the parties' stipulation to the guidelines calculation, neither the Court nor the Probation Office was bound by the parties' agreement. Accordingly, under Peterson's version of events, he received nothing of value in exchange for his guilty plea, because he still ran the very real risk of being designated as a career offender. Indeed, neither the United States, nor Conway, had control over the Court's judgment and were powerless to ensure that Peterson would not be subject to the career offender guidelines.

What makes infinitely more sense is Conway's version of the negotiations and discussions. Peterson did not qualify as a career offender—that much is undisputed. In contrast, the United States had the ability to file an information under 21 U.S.C. § 851, and such an information would have resulted in a substantially enhanced sentence for Peterson. Conway explained this risk to Peterson, who ultimately agreed that the risk was not worth taking. The only logical conclusion that the Court can reach is that Conway's testimony on this issue is more credible than the recollections offered by Peterson, and under Conway's scenario, his advice was correct—the plea agreement significantly reduced the potential sentence Peterson faced if he proceeded to trial.

Even if Peterson's version of the facts is adopted, he must still demonstrate prejudice from the alleged "faulty" advice. Peterson must show that absent the alleged error, there is a "reasonable probability" he would not have pled guilty and would have instead insisted on going to trial. *Burket*, 208 F.3d at 189. This prejudice prong is

9

analyzed based on whether the decision to go to trial would be "rational under the circumstances," not based on the subjective preference of a petitioner. *Dyess*, 730 F.3d at 361.

At the time of Peterson's offense, conviction, and sentence, 21 U.S.C. § 841(b)(1)(B) provided that, in the case of a drug trafficking offense involving 100 grams or more of a mixture containing a detectable amount of heroin, the offender "shall be sentenced to a term of imprisonment which may not be less than 5 and not more than 40 years." 21 U.S.C. § 841(b)(1)((B)(i). However, if the offender committed the violation "after a prior conviction for a felony drug offense has become final," the statutory sentence was enhanced to "not less than 10 years and not more than life imprisonment." *Id*. Accordingly, Peterson's prior felony conviction for possession of controlled substances exposed him to a mandatory minimum sentence of five additional years in prison. To use the prior conviction at sentencing, the United States had to file an information under 21 U.S.C. § 851. By agreeing to forgo the information, the United States effectively agreed to reduce Peterson's mandatory minimum sentence from 120 months to 60 months.

At Peterson's hearing to enter the guilty plea, he acknowledged under oath that he understood the terms of the plea agreement and wanted the Sentencing Court to accept it. (ECF No. 717 at 9). The Sentencing Court reviewed the Indictment with Peterson, explaining each aspect of the conspiracy charge against him. (*Id*. at 11-12). After listening to the explanation, Peterson acknowledged that he had committed the offense charged by conspiring to distribute 100 grams or more of heroin in Huntington, West Virginia. (*Id*. at 12). Peterson confirmed that he had reviewed the stipulation of facts with Conway and believed it to be true and accurate. (*Id*. at 13). In the stipulation of facts, Peterson admitted that he obtained heroin and fentanyl in Detroit and brought it to Huntington to distribute.

He further conceded that he sold at least 100 grams of heroin during his drug trafficking operation. (ECF No. 717 at 13-14).

After reviewing the plea agreement and stipulation of facts with Peterson, the Court heard the testimony of Special Agent Irwin with the Drug Enforcement Agency. (ECF No. 717 at 18-23). Special Agent Irwin testified that his investigation of Peterson's drug trafficking organization began in August 2017. As part of the investigation, law enforcement officers conducted controlled buys of heroin and fentanyl from Peterson and his colleagues and conducted searches of Peterson's residence and motel room. (*Id.* at 19). After collecting heroin, numerous cell phones, currency, and firearms from these searches, law enforcement applied for and received a warrant to intercept Peterson's telephone calls. (*Id.* at 19-20). Officers learned that Peterson made daily calls in furtherance of his drug trafficking business. Surveillance of Peterson revealed that he participated in daily drug transactions with multiple customers; that he obtained heroin and fentanyl from his co-defendant and brother, Willie Peterson; and that he sent proceeds from his drug sales to Willie Peterson in Detroit. (ECF No. 717 at 21-24). The evidence against Peterson, as related by Special Agent Irwin, was strong, including controlled buys, physical evidence recovered form Peterson's residence, tapes of intercepted calls made to and from Peterson, and evidence gathered from surveillance of Peterson. At the conclusion of the agent's testimony, Peterson agreed that Special Agent Irwin's statements were substantially correct. (*Id.* at 24). Peterson further acknowledged that he understood his rights, the possible sentence range, and that the Court was not bound by the USSG calculation stipulated by the parties. *(Id.* at 25-26). After going through each and every right that Peterson was abandoning by pleading guilty, too which Peterson affirmed his understanding, the Court found that the guilty plea was voluntary

and intelligently made by Peterson. (ECF No. 717 at 26-33).

Considering the testimony and Peterson's statements made at the plea hearing, the likelihood of conviction and its associated consequences lead to the conclusion that rejecting the plea agreement and going to trial would not "have been objectively reasonable in light of all of the facts." *Fugit*, 703 F.3d at 260. The plea agreement provided a significant benefit to Peterson in that it reduced the mandatory minimum and maximum sentence faced by Peterson and provided him with a three-level decrease under the USSG for acceptance of responsibility, which he would not have received had he proceeded to trial.

Accordingly, the undersigned **FINDS** that Peterson has failed to carry his burden to establish by a preponderance of the evidence that faulty legal advice led to his guilty plea, or that he was prejudiced by the alleged erroneous advice.

### 2. Claim Two—Failure to object to enhancement

Peterson claims that he asked Conway to challenge the USSG sentence enhancement related to Peterson's leadership role in the drug trafficking operation. (ECF No. 671 at 5). Peterson contends that Conway refused to object to the enhancement even after the Sentencing Court questioned Conway about his reasons for not raising a challenge to the two-level increase. (*Id.*)

In his affidavit, Conway testifies that Peterson was well aware that a leadership enhancement would apply, because Peterson acquiesced to the enhancement as part of the plea agreement. (ECF No. 681 at 2). According to Conway, he discussed with Peterson the potential of having a sentence enhancement, which was greater than two levels, applied under USSG § 3B1.1. (*Id.*). They subsequently negotiated the two-level adjustment, which was the minimum leadership adjustment available.

The record confirms Conway's statement that a two-level leadership enhancement was contained in the parties' written agreement. (ECF No. 409 at 6). Accordingly, Peterson knew prior to entering a guilty plea that he would receive a two-level upward adjustment to his base offense level related to his aggravated role in the conspiracy. In addition, Conway is correct that Peterson could potentially have received a greater sentence enhancement under USSG § 3B1.1. Under that guideline, additional levels are added, depending on the role of the defendant and the number of participants in the conspiracy. *See* USSG § 3B1.1.(a) and (b) (adjusting upward by three to four levels when the criminal activity involves five or more participants). The conspiracy with which Peterson was charged involved a total of fifteen co-conspirators. As such, Peterson was likely to receive a sentence enhancement greater than the two-level enhancement negotiated in the plea agreement.

At Peterson's plea hearing, the Sentencing Court asked Conway to review the terms of the proposed plea agreement. (ECF No. 717 at 5-6). As part of this recitation, Conway noted that Peterson would receive a two-level enhancement for his aggravating role. (*Id*. at 7). Peterson was asked if he understood the terms of the plea agreement and what it required of him. (*Id*. at 9). Peterson acknowledged that he did understand. He also confirmed for the Sentencing Court that he had reviewed every paragraph of the plea agreement with his counsel before signing it; that he understood that he had agreed to a two-level enhancement; and that he wanted the Sentencing Court to accept the plea agreement. (*Id*. at 9, 27-28). In fact, Peterson told the Court that he felt the two-level enhancement for his role in the offense was "fair." (*Id*. at 18). Contrary to Peterson's representation, the Sentencing Court did not question Conway about his decision not to object to the enhancement; particularly, as the enhancement was endorsed by Peterson.

13

Moreover, Peterson confirmed that Conway had discussed the application of the USSG with him and that he understood the Court's sentence calculation could vary from the attorneys' estimate. (*Id.* at 26-27). Finally, Peterson acknowledged that Conway had answered all of his questions, and he was completely satisfied with Conway's legal advice. (*Id.* at 5).

In the PSR, Officer Srednicki reported that the plea agreement contained a provision regarding the USSG in which the parties calculated the offense level as including a two-level enhancement for Peterson's role in the drug trafficking conspiracy, although they reserved their right to argue over an enhancement related to firearms possession. (ECF No. 584 at 7-8). At his sentencing hearing, Peterson advised the Sentencing Court that he had reviewed the PSR with Conway and understood it. (ECF No. 715 at 2-3). The Sentencing Court went through the calculation, including the two-level enhancement for Peterson's role without comment by Peterson. He was permitted to make a statement and offered an apology. (*Id.* at 9). At no time did Peterson question or protest the two-level enhancement. Again contrary to Peterson's representation, the Sentencing Court did not inquire of Conway at the sentencing hearing regarding his decision not to object to the leadership enhancement.

Given this record, the undersigned **FINDS** that Peterson's claim that he asked Conway to object to the two-level enhancement under USSG § 3B1.1 is not credible. In any event, once Peterson voluntarily agreed to the enhancement as part of the plea agreement, and then confirmed with the Sentencing Court that he felt the enhancement was "fair," Conway did not have a valid basis upon which to object. "[T]rial counsel cannot be ineffective for failing to make a meritless futile objection." *Smith v. Padula*, 444 F. Supp. 2d 531, 539 (D.S.C. 2006).

14

With respect to prejudice, Peterson is also hard-pressed to meet his burden of proof. Given the evidence provided by Special Agent Irwin at the plea hearing, combined with Peterson's admissions and the five guilty pleas that were entered by Peterson's co-conspirators on or before the date of his plea, Peterson would likely have received an enhancement in excess of the two levels he negotiated. "A defendant is not prejudiced if his counsel fails to make an objection that is 'wholly meritless under current governing law[.]'" *Rodriguez v. Bush*, 842 F.3d 343, 346 (4th Cir. 2016) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993)).

Therefore, the undersigned further **FINDS** that Peterson has not carried his burden to show by a preponderance of the evidence that Conway's alleged failure to challenge the two-level enhancement was deficient or prejudicial.

### 3. Claim Three—Failure to challenge relevant conduct of co-defendant

Peterson alleges that Conway refused to challenge the relevant conduct of David Miller, a co-conspirator. (ECF No. 671 at 7). Peterson claims that phone conversations occurred between Miller and Willie Peterson, which were improperly attributed to Peterson as relevant conduct. He asserts that his counsel should have objected to those transactions when they were ascribed to Peterson.

In his affidavit, Conway states that the drug weight attributed to Peterson was a negotiated part of the plea agreement. (ECF No. 681 at 2). Conway concedes that Peterson denied his involvement in the drugs transactions associated with David Miller, but Peterson concurred that the total drug weight credited to him in the plea agreement was appropriate. Conway adds that he noted Peterson's denial of responsibility for the drugs associated with Mr. Miller at sentencing, but indicated that Peterson did not intend to contest the weight attributed to him. (*Id.* at 3).

15

In the plea agreement, Peterson stipulated to a total drug weight. (ECF No. 409 at 11-12). First, he admitted that between August 2017 and August 2018, he conspired with multiple individuals to distribute 100 grams or more of heroin and a quantity of fentanyl. (Id. at 10). In addition, between September 2017 and April 2018, Peterson supplied co-defendant, Lonnie Berry, with heroin to sell. (*Id*. at 11). With regard to searches and controlled purchases, Peterson stated that on August 4, 2017, officers found four grams of heroin at Peterson's residence. (*Id*. at 11). Peterson additionally confirmed that between October 2017 and November 2017, he arranged for the sale of heroin/fentanyl to an informant on five occasions, and the sales totaled 6.5 grams of heroin and 37.95 grams of fentanyl. (*Id*.). He directed two more sales in January 2018 for an additional two grams of heroin, and one more transaction that same month for an unspecified amount of heroin. Peterson stipulated that the relevant conduct attributable to him at sentencing was more than 1,000, but less than 3000, kilograms of marijuana equivalency. (*Id*. at 12).

In the PSR, Officer Srednicki calculated the drug weight ascribed to Peterson to be 1,615.4 kilograms of marijuana equivalency. Defendant expressed his understanding of her report and did not contest her calculation. (ECF No. 715 at 2-3). At the plea hearing, the Sentencing Court reviewed the parties' stipulation on relevant conduct and drug weight with Peterson. (ECF No. 717 at 14-17). When Peterson expressed some confusion over the marijuana equivalency, the Sentencing Court explained the concept and then asked Peterson if he agreed "that the 1,000 to 3,000 kilograms is a fair and accurate estimate of the marijuana equivalency of the heroin and fentanyl that you were involved in dealing as part of this conspiracy," to which Peterson voiced his assent. (*Id*. at 17).

In view of Peterson's admission and his stipulation of distributing more than 1000 kilograms of heroin, as well as fentanyl, any objection by Conway to the relevant conduct

16

determination would have been fruitless. Furthermore, Peterson acknowledged the drug weight attributable to him under oath and to the Court during his plea hearing. Sworn statements carry a strong "presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977). For that reason, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Attorney Gen.,* 956 F.2d 1290, 1299 (4th Cir. 1992). Peterson has not provided any evidence to contradict the statements he made to the Court, or the statements to which he agreed in his stipulation of facts.

Accordingly, the undersigned **FINDS** that Peterson fails to demonstrate by a preponderance of the evidence that Conway was ineffective by not challenging the relevant conduct finding, or that any such failure caused prejudice to Peterson. In sum, Peterson has not shown ineffective assistance of counsel and, thus, has not demonstrated a violation of his Sixth Amendment right. Consequently, there is no basis to vacate, set aside, or correct Peterson's conviction and sentence.

### IV.   Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 671), be **DENIED** and this civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the

parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED**: June 12, 2020

Cheryl A. Eifert
United States Magistrate Judge